IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

No. 13-4339

───────────────

UNITED STATES OF AMERICA,

*Appellee*,

v.

LAWRENCE LEO HAWKINS, JR.,

*Appellant*.

───────────────

Appeal from the United States District Court
for the Eastern District of Virginia
at Norfolk
*The Honorable Arenda L. Wright Allen, District Judge*

───────────────

BRIEF OF THE UNITED STATES

───────────────

Neil H. MacBride                    Richard D. Cooke
United States Attorney              Assistant United States Attorney
                                    600 East Main Street, Suite 1800
William D. Muhr                     Richmond, Virginia 23219
Assistant United States Attorney    804-819-5400

*Attorneys for the United States of America*

# Table of Contents

**Page**

Table of Authorities ..................................................................................iiii

Introduction ................................................................................................1

Issues Presented .........................................................................................3

Statement of the Case.................................................................................4

Statement of Facts......................................................................................9

Summary of Argument ............................................................................11

Argument..................................................................................................13

I.  This Court lacks jurisdiction to hear an interlocutory appeal challenging the denial of defendant's request to represent himself, and even if there were jurisdiction, the district court's factual findings that the request was not knowing and voluntary are not clearly erroneous .........................................13

    A.  Standard of Review ...........................................................13

    B.  Analysis .............................................................................14

        1.  This Court lacks jurisdiction to hear an interlocutory appeal challenging the denial of defendant's request to represent himself ....14

        2.  If this Court were to conclude that there is jurisdiction to review the denial of defendant's motion to represent himself, the district court did not clearly err in finding that the request was not knowing and voluntary..............................................................22

II.  This Court should not accept defense counsel's speedy-trial argument submitted under *Anders*, and even if the Court did, the Court lacks jurisdiction to review a speedy-trial claim in an interlocutory appeal .........25

    A.  Standard of Review ...........................................................25

i

B. Analysis .............................................................................26

  1. Quasi-*Anders* briefs where some issues are submitted under *Anders* and some are not fail to comply with the law ........................26

  2. The reasons for having *Anders* briefs do not apply to interlocutry appeals ....................................................................................34

  3. Even if this Court were to permit *Anders* procedures to be used in an interlocutory appeal and were to permit defense counsel to submit a quasi-*Anders* brief, the speedy-trial claim that defense counsel identifies as frivolous is indeed frivolous ...........................................41

Conclusion .............................................................................................42

Statement Regarding Oral Argument ....................................................44

Certificate of Compliance ......................................................................46

Certificate of Service .............................................................................47

# Table of Authorities

## Cases

*Anders v. California*, 386 U.S. 738 (1967) ...................................................... *passim*

*Bell v. Jarvis*, 236 F.3d 149 (4th Cir. 2000) (en banc) ........................................31

*Catlin v. United States*, 324 U.S. 229 (1945) ........................................................14

*Cobbledick v. United States*, 309 U.S. 323 (1940) ...............................................15

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949)................................15

*DiBella v. United States*, 369 U.S. 121 (1962)......................................................16

*Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863 (1978) ................16

*Faretta v. California*, 422 U.S. 806 (1975) ...........................................................23

*Fields v. Murray*, 49 F.3d 1024 (4th Cir. 1995) (en banc) ....................................14

*Flanagan v. United States*, 465 U.S. 259 (1984)...................................... 2, 16, 18, 19

*Florida v. Nixon*, 543 U.S. 175 (2004) .................................................................33

*Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982) ........................21

*Hogg v. United States*, 428 F.2d 274 (6th Cir. 1970) ............................................40

*Jones v. Barnes*, 463 U.S. 745 (1983) ...................................................... 30, 31, 33

*Kporlor v. Holder*, 597 F.3d 222 (4th Cir. 2010) ...................................... 13, 25

*Marshall v. Rodgers*, 133 S. Ct. 1446 (2013) (per curiam) ..................................23

*Martinez v. Court of Appeal of Cal.*, 528 U.S. 152 (2000)....................................32

*McCoy v. Court of Appeals of Wis., Dist. 1*, 486 U.S. 429 (1988) .........................31

*McKaskie v. Wiggins*, 465 U.S. 168 (1984)...........................................................19

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009)................................ 15, 17

*Neder v. United States*, 527 U.S. 1 (1999)..............................................................19

*Pierce v. Blaine*, 467 F.3d 362 (3d Cir. 2006)........................................................37

*Sell v. United States*, 539 U.S. 166 (2003) ...................................................... 17, 38

*United States v. Baker*, 719 F.3d 313 (4th Cir. 2013) ...........................................31

*United States v. Bernard*, 708 F.3d 583 (4th Cir. 2013).......................................22

*United States v. Blake*, 571 F.3d 331 (4th Cir. 2009)............................................21

*United States v. Buchanan*, 946 F.2d 325 (4th Cir. 1991)..................................2, 41

*United States v. Bush*, 404 F.3d 263 (4th Cir. 2005) .................................. 14, 22, 23

*United States v. Chapman*, 593 F.3d 365 (4th Cir. 2010) ......................................33

*United States v. Deters*, 143 F.3d 577 (10th Cir. 1998) .........................................37

*United States v. Edwards*, 2013 WL 3828177 (4th Cir. July 25, 2013) .................24

*United States v. Ellis*, 646 F.2d 132 (4th Cir. 1981)...............................................21

*United States v. Flores*, 632 F.3d 229 (5th Cir. 2011)..........................................39

*United States v. Frazier-El*, 204 F.3d 553 (4th Cir. 2000) .............................. 22, 23

*United States v. Fuller*, 477 F. App'x 991 (4th Cir. 2012)......................................7

*United States v. Hill*, 19 F.3d 984 (5th Cir. 1994)................................................40

*United States v. Jefferson*, 546 F.3d 300 (4th Cir. 2008) ...................................16

*United States v. MacDonald*, 435 U.S. 850 (1978) ...........................................2, 41

*United States v. McNeill*, 484 F.3d 301 (4th Cir. 2007) .......................................39

*United States v. Montgomery*, 262 F.3d 233 (4th Cir. 2001)............................ 21, 42

*United States v. Moussaoui*, 333 F.3d 509 (4th Cir. 2003) ............................. 15, 16

*United States v. Moussaoui*, 43 F. App'x 612 (4th Cir. 2002) ...........................1, 20

*United States v. Moussaoui*, 483 F.3d 220 (4th Cir. 2007) ...................................17

*United States v. Myers*, 593 F.3d 338 (4th Cir. 2010) ................................ 14, 15, 17

*United States v. Ogbonna*, 184 F.3d 447 (5th Cir. 1999) ......................................34

*United States v. Oreye*, 263 F.3d 669 (7th Cir. 2001) ..........................................34

*United States v. Pendergrass*, 503 F. App'x 237 (4th Cir. 2013) .................... 27, 28

*United States v. Powell*, 468 F.3d 862 (5th Cir. 2006)................................. 3, 38, 43

*United States v. Puryear*, 335 F. App'x 291 (4th Cir. 2009)..................... 27, 28, 30

*United States v. Singleton*, 107 F.3d 1091 (4th Cir. 1997)........................ 14, 23, 24

*United States v. Song*, 2013 WL 3186440 (4th Cir. 2013) (unpublished).............37

*United States v. Spaulding*, 323 F. App'x 236 (4th Cir. 2009) .............................7

*United States v. Thompson*, 462 F. App'x 561 (6th Cir. 2012) .............................37

*United States v. Tucker*, 2013 WL 4034472 (4th Cir. Aug. 9, 2013) (unpub) ........24

*United States v. Turner*, 677 F.3d 570 (3d Cir. 2012) .......................................... *passim*

*United States v. Wagner*, 103 F.3d 551 (7th Cir. 1996) ........................................39

*United States v. Westmoreland*, 712 F.3d 1066 (7th Cir. 2013)............................33

*United States v. Weston*, 194 F.3d 145 (D.C. Cir. 1999)......................................37

*United States v. White*, 480 F. App'x 193 (4th Cir. 2012) ....................................7

*United States v. Youla*, 241 F.3d 296 (3d Cir. 2001)............................................39

*United States v. Young*, 12 F. App'x 147 (4th Cir. 2001)...................................2, 20

*Van Cauwenberge v. Biard*, 486 U.S. 517 (1988)..................................................16

**Statutes**

18 U.S.C. § 3731 ....................................................................................................39

18 U.S.C. § 4241 ......................................................................................................8

18 U.S.C. § 922(g)(1)................................................................................................4

18 U.S.C. § 924(c) ........................................................................4

21 U.S.C. § 844 ............................................................................4

21 U.S.C. § 853 ............................................................................4

28 U.S.C. § 2073 .........................................................................17

21 U.S.C. § 841 ............................................................................4

**Federal Regulations**

28 C.F.R. § 0.20(b) .....................................................................40

## Introduction

Defendant Lawrence Leo Hawkins, Jr. is awaiting trial on firearm and drug offenses and has sought to represent himself. After the district court initially permitted defendant to represent himself, the district court rescinded its "preliminary finding" made roughly two months earlier that defendant's request to represent himself was knowing and voluntary. JA 24. After a second hearing, where defendant refused to answer the court's questions and made bizarre remarks, in keeping with his later assertions that he is Moorish or a sovereign citizen, the court determined that defendant was not "aware of the dangers and disadvantages of self-representation" and did not "fully understand[] the risks presented." JA 26. Defendant then filed a pro se interlocutory appeal, challenging the denial of his motion to represent himself and the denial of his motion to dismiss under the Speedy Trial Act.

In unpublished opinions, this Court has held that an interlocutory appeal of an order denying a criminal defendant the right to self-representation "fail[s] the first and third prongs" of the collateral-order doctrine—namely, the requirements that the ruling (1) be a final and conclusive rejection of a claim and (3) be effectively unreviewable after conviction. *United States v. Moussaoui*, 43 F. App'x 612, 613-14 (4th Cir. 2002). As this Court has explained, "Challenges related to the appointment of counsel and the right to self-representation may be

1

reconsidered by the district court at any time and are reviewable on appeal following a conviction," *id.,* precluding jurisdiction for a pretrial appeal. *See also Flanagan v. United States*, 465 U.S. 259, 268 (1984) (holding that a district court's pretrial disqualification of defense counsel in a criminal prosecution cannot be appealed under the collateral-order doctrine, comparing disqualification of counsel to the denial of the right to self-representation, and explaining that error on such rulings can be corrected after conviction); *United States v. Young*, 12 F. App'x 147, 147-48 (4th Cir. 2001) (dismissing interlocutory appeal of "orders denying [defendant's] pretrial motion to represent himself in association with other counsel").

In a portion of defense counsel's brief designated as submitted under *Anders v. California*, 386 U.S. 738 (1967), defense counsel also mentions defendant's motion to dismiss under the Speedy Trial Act.  But both this Court and the Supreme Court have held that a defendant may not bring a speedy-trial claim in an interlocutory appeal.  This Court's opinion is published and binding and of course the Supreme Court's is as well.  *See, e.g., United States v. MacDonald*, 435 U.S. 850, 858-61 (1978) (denial of motion to dismiss under constitutional right to speedy trial not immediately appealable before final judgment); *United States v. Buchanan*, 946 F.2d 325, 327 (4th Cir. 1991) (order denying motion to dismiss

indictment for alleged violation of Speedy Trial Act not immediately appealable before final judgment).

## Issues Presented

1.   May a defendant bring an interlocutory appeal when a district court rejects the defendant's request to represent himself?

2.   Assuming there is jurisdiction for a defendant to bring an interlocutory appeal of the denial of his request to represent himself, did the district court err in denying the request here?

3.   May a defendant bring an interlocutory appeal of the denial of his motion to dismiss under the Speedy Trial Act, even though doing so would be contrary to controlling precedent from this Court and the Supreme Court?

4.   Is the Third Circuit correct that a defense lawyer may not submit an appellate brief that includes both frivolous issues submitted under *Anders* and nonfrivolous issues that are not submitted under *Anders*?  *See United States v. Turner*, 677 F.3d 570 (3d Cir. 2012).

5.   Is the Fifth Circuit correct that the *Anders* procedure may not be used at all in an interlocutory appeal?  *See United States v. Powell*, 468 F.3d 862 (5th Cir. 2006).

## Statement of the Case

Defendant was indicted in a four-count indictment in the Eastern District of Virginia on December 19, 2012. JA 2, 7-10. Count one charges him with possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). JA 7-8. Count two charges him with possessing heroin, in violation of 21 U.S.C. § 844. JA 8. Count three charges him with possessing two .40 caliber Glock pistols and a Ruger 9mm pistol in furtherance of his drug trafficking offense, in violation of 18 U.S.C. § 924(c). JA 8. And count 4 charges him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). JA 8. A criminal forfeiture allegation is also included under 21 U.S.C. § 853. JA 9.

Defendant was arrested on January 11, 2013, had his initial appearance the same day, and was temporarily detained pending a detention hearing. JA 2. Just four days later, defendant filed a pro se suppression motion, even though an attorney from the Federal Public Defender's Office had been appointed to represent him. JA 3.

On the day after defendant filed his suppression motion, he appeared before a magistrate judge for his detention hearing and was permitted to represent himself at that hearing. *Id.* Defendant was ordered detained, and when he was formally arraigned, he refused to enter a plea. *Id.* A jury trial was scheduled for March 20, 2013. *Id.*

4

By January 28, 2013, defense counsel filed a motion to withdraw. *Id*. After the case was assigned to two different district judges, defendant's case was ultimately assigned on February 12, 2013, to the Honorable Arenda L. Wright Allen, United States District Judge. JA 4. On February 28, 2013, the district court held a hearing on defense counsel's motion to withdraw and tentatively granted defendant's request to represent himself. *Id*. The jury trial was rescheduled for April 9, 2013. *Id*. Defendant's prior counsel from the Federal Public Defender's Office was permitted to withdraw and new standby counsel was appointed.

At the hearing on February 28, counsel from the Federal Public Defender's Office explained that three different lawyers in the office, all of whom the Court described as "outstanding," had tried but failed to communicate with defendant. SJA 4. As a result, none of the three lawyers had been able to relay to defendant the elements of the offense, the potential statutory penalty range, the possible advisory guideline range, the mandatory minimum for the § 924(c) count, or legal defenses. SJA 4-5. Defense counsel placed on the record that he was giving defendant the discovery provided to defense counsel by the United States and described the amount of material as "a couple inches thick." SJA7.

At the hearing, the court elicited from defendant that he was 34 years old at the time, had a GED, completed enough college courses for an associate degree, was not suffering from any mental health issues, had not ever seen a psychiatrist or

psychologist, and did not have a history of mental-health problems.  SJA 8-9.  The court also reviewed with defendant the penalties for the charges in the indictment. SJA 10-12.

During the hearing, defendant said, "I wish to challenge the validity of the indictment," SJA 10, requested "to plead to the jurisdiction," SJA 12, and claimed about his prior conviction in federal court that "the debtor [was convicted] on that account, on that trust account."  SJA 13.  Defendant added, "It was a corporate fiction entity" and that he is "a flesh and blood person."  SJA 14.  Defendant informed the district court that he could not answer the court's questions about defendant's prior conviction.  SJA 14.  Defendant also denied meeting with the three lawyers from the Federal Public Defenders Office.  SJA 15.  Defendant added that the "Sixth Amendment afford me the right of self-representation.  I appear today in propria persona sui juris."  SJA 15.

In questioning the prosecutor, the district court learned that defendant had previously pleaded guilty in the federal district court in Norfolk and had been represented by counsel.  SJA 16.  The court also observed that it had "looked at the detention order and it showed me [that defendant's] criminal history was lengthy." SJA 20.

Defendant soon filed various pleadings challenging the legal proceedings in the district court in keeping with his claim at that time to be Moorish.  JA 5.  *Cf.*

6

*United States v. White*, 480 F. App'x 193, 194 (4th Cir. 2012) (rejecting

defendant's argument "that the district court lacked jurisdiction over his

prosecution because he is a Moorish American"); *United States v. Fuller*, 477 F.

App'x 991, 993 (4th Cir. 2012) (same); *United States v. Spaulding*, 323 F. App'x

236 (4th Cir. 2009) (same).

On April 16, 2013, the district court held a second hearing, with defendant's

standby counsel present, and vacated the court's "prior preliminary finding" that

defendant had knowingly and voluntarily waived his right to counsel.  SJA 5.  As

the court's order entered the day after the hearing explained, because of

defendant's refusal to answer questions from the court, the court could not

determine whether defendant appreciated the dangers of self-representation,

understood the charges, and had knowingly and intelligently waived his rights:

> After a careful scrutiny of [the] record before the Court, including a
> transcript of the proceedings conducted on February 28, 2013, the written
> submissions by the Defendant, and the testimony presented by the Defendant
> during the supplemental hearing conducted on April 16, 2013, this Court is
> compelled to conclude that the Defendant's attempted waiver of his right to
> counsel has not been established as knowing, intelligent and voluntary.
> During the colloquy that the undersigned attempted to conduct with the
> Defendant on February 28, 2013, the Defendant repeatedly denied having
> any comprehension of the nature of the charges he faces, the severity of the
> penalties that could be imposed upon him, or the process in which a jury
> would be empaneled and evidence would be presented in his prosecution.
>
> After being given the opportunity at a second hearing on April 16, 2013, to
> indicate that his attempted waiver of his right to counsel and his requests for

self-representation were fully informed and voluntary, the Defendant refused
to provide responsive answers to questions posed to him and offered no
basis for the Court to conclude that he was aware of the dangers and
disadvantages of self-representation, and that he has chosen to waive the
right to counsel only after fully understanding the risks presented.  His
declarations and demeanor suggested that he was refusing to cooperate as a
form of protest against his prosecution, and precluded the Court from
determining whether his attempted waiver of his right to counsel was
knowing and intelligent.

JA 25-26.  Thus, the court vacated "its prior preliminary finding that the Defendant

should be permitted to exercise the limited right to self-representation."  JA 24.

Defendant's statements at the hearing on April 26 are reviewed in the statement of

facts below.

After determining that defendant had not met the requirements for self-

representation, at least at the time of the hearing on April 16, 2013, the district

court also ordered a competency evaluation of defendant.  The district court found

that "there is reasonable cause to believe that the Defendant may presently be

suffering from a mental disease or defect," and therefore the court ordered an

evaluation of defendant's competency to stand trial under 18 U.S.C. § 4241(a).  JA

27.

Defendant filed a notice of appeal on April 24, 2013, within 14 days of the

district court's order of April 17, 2013.  JA 5.  No trial date is currently set because

of the pending interlocutory appeal.

8

After the case was docketed on appeal, the United States moved to dismiss the appeal for lack of jurisdiction. This Court has not ruled on the motion and ordered full briefing. Meanwhile, during the time that this appeal has been pending, officials at Butner Federal Correctional Institution mailed to the district court on July 31, 2013, a letter reporting the results of defendant's competency evaluation and concluded that defendant is competent to stand trial. But proceedings in the district court remain on hold due to this interlocutory appeal.

### Statement of Facts

At the hearing on April 16, 2013, defendant had new appointed standby counsel and continued to refuse to answer the district court's questions that were aimed at determining whether defendant's waiver of his right to counsel was valid. When the district court sought to have defendant sworn in before questioning him about his request to represent himself, defendant responded, "Ms. Allen, I ask the prosecutor to be sworn and also you. We're all going to speak for the record, ma'am." JA 12.

Soon after that, defendant interrupted the district judge and spontaneously began talking about a "writ of . . . amendment right to conduct his or her own affairs in criminal defense." JA 15. The district court responded, "Mr. Hawkins." *Id*. But defendant pushed on. "The optional right to counsel does not force a

requirement of counsel on an unwilling criminal defendant. I ask that you please get your marshals to refrain from using their excessive force. Please, ma'am." *Id*.

When the court asked defendant how old he was, defendant responded, "The constitution only authorizes two federal crimes, treason and counterfeiting. All other crimes are matters of state jurisdiction which means that all federal drug crimes are unconstitutional. Congress got around this roadblock by simply writing the drug laws under civil and not criminal authority. All criminal drug laws come under. . . ." *Id*.

The district court stated at that point, "Excuse me, you're not being responsive." JA 16. But defendant continued on. "—and are not part of the criminal code which is Title 18. In sum, the government is applying criminal sanctions to a civil law are a highly illegal maneuver. Ma'am, I have made it clear that I want my Sixth Amendment right of self-representation." *Id*.

When the court asked whether defendant had ever represented himself in a criminal case, defendant responded, "I do not wish to enter any contracts with you, Ms. Allen." *Id.*

The court asked defendant whether he understood what he was charged with in count one, and defendant replied, "I wish to enter a jurisdictional plea. You cannot render a judgment in the case where there is no argument. I have not entered a plea of guilty or not guilty." *Id.*

The remainder of the hearing continued with defendant defying the court. At the conclusion of the hearing, the court denied defendant's request to represent himself, denied his speedy-trial motion, and ordered that his competency be evaluated by the Federal Bureau of Prisons.  JA 21-22.

Addressing defense counsel, the district court said, "So you're appointed at this juncture to represent him until he comes back from wherever he is going and then we will see if—how he is mentally and then whether or not he can understand the nature of the offenses and the potential penalties to represent himself for his jury trial."  JA 22-23.

## Summary of Argument

1.  As this Court has twice held in unpublished opinions, appellate courts lack jurisdiction to hear an interlocutory appeal challenging the denial of a defendant's request to represent himself.  This Court's rulings in those unpublished opinions follow directly from Supreme Court precedent rejecting jurisdiction for an interlocutory appeal over the pretrial disqualification of a defendant's lawyer. As the Supreme Court explained, errors in pretrial disqualification of counsel, like errors in denying a defendant's request for self-representation, may be corrected after conviction, making interlocutory review inappropriate.  Indeed, errors in denying the right to self-representation are not subject to harmlessness analysis, and the lack of harmlessness review, the Supreme Court has held, establishes that

11

interlocutory review is inappropriate. Relief from erroneous denial of such rights is always available once there is a final judgment.

2. Even if this Court did have jurisdiction for an interlocutory review of defendant's request for self-representation, defendant would not be entitled to relief. His repeated refusals to answer the district court's questions prevented the court from establishing that his waiver of counsel was knowing and voluntary. Because defendant made it impossible for the district court to determine whether the waiver was knowing and voluntary, defendant cannot argue now that the district court was required to find that the waiver was knowing and voluntary. Essentially, what defendant is requesting is that he have the last and unchallengeable word on whether he should be permitted to represent himself, but the law does not confer that right on him.

3. Defense counsel has raised an argument under *Anders* about whether the district court erred in denying defendant's motion to dismiss under the Speedy Trial Act. But precedent from this Court and the Supreme Court establish beyond dispute that a court of appeals lacks jurisdiction to hear a speedy-trial claim in a defendant's interlocutory appeal. Moreover, the Third Circuit has persuasively concluded that defense counsel may not submit briefs that raise some issues under *Anders* and some issues not under *Anders*. As this Court has said in one unpublished opinion (but not followed in other unpublished opinions), *Anders* is

12

reserved for appeals that are "wholly" frivolous. Although this Court has sent an *Anders* notice to defendant, this Court should not conduct an *Anders* review for a second reason. The Fifth Circuit has correctly held that the *Anders* procedure does not apply to an interlocutory appeal. *Anders* itself said that its procedure was for appeals after conviction, and there are a host of strong reasons for not extending *Anders* to interlocutory appeals, including the needless delays caused by transcribing all hearings and trial days before deciding a defendant's frivolous interlocutory appeal, the risk that a court of appeals may meddle in considered strategy calls by defense counsel not to challenge a possible error, and the limited scope of interlocutory appeals.

## Argument

**I. This Court lacks jurisdiction to hear an interlocutory appeal challenging the denial of defendant's request to represent himself, and even if there were jurisdiction, the district court's factual findings that the request was not knowing and voluntary are not clearly erroneous.**

### A. Standard of Review

This Court's determination of whether there is jurisdiction for an interlocutory appeal is a question of law that this Court evaluates in the first instance. Hence, there is no deferential standard of review. "Federal appellate courts determine de novo whether they have subject matter jurisdiction to decide a case." *Kporlor v. Holder*, 597 F.3d 222, 225 (4th Cir. 2010).

13

If this Court were to determine that there is jurisdiction to review the denial of defendant's request to represent himself, then in post-conviction appeals, this Court has reviewed for clear error a district court's findings of fact in denying a motion for self-representation. *United States v. Bush*, 404 F.3d 263, 270 (4th Cir. 2005). The legal determination of whether a defendant is entitled to represent himself is reviewed de novo, but again factual components of that determination, such as whether a defendant made a clear and unequivocal invocation of the right to self-representation, are subject to clear-error review. *United States v. Singleton*, 107 F.3d 1091, 1097 n.3 (4th Cir. 1997) (citing *Fields v. Murray*, 49 F.3d 1024, 1030-32 (4th Cir. 1995) (en banc)).

## B.    Analysis

### 1.    This Court lacks jurisdiction to hear an interlocutory appeal challenging the denial of defendant's request to represent himself.

This Court possesses jurisdiction under 28 U.S.C. § 1291 to hear appeals from final decisions of federal district courts. A final decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *United States v. Myers*, 593 F.3d 338, 344 (4th Cir. 2010) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). The requirement that review is permitted only after a final judgment seeks to "combine all reviewable stages from a proceeding

into one appeal and thus to prevent the harassment and cost of interlocutory appeals." *Id.* (citing *Cobbledick v. United States*, 309 U.S. 323, 325 (1940)).

One highly limited, narrow exception to the requirement of a final judgment is the collateral-order doctrine. *See, e.g., Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). Under the collateral-order doctrine, an appellate court may hear an appeal of "a small set of prejudgment orders that are 'collateral to' the merits of an action and 'too important' to be denied immediate review." *Myers*, 593 F.3d at 345 (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009)). The "small category" of rulings that fall within the collateral-order doctrine involve "only decisions [1] that are conclusive, [2] that resolve important questions separate from the merits, and [3] that are effectively unreviewable on appeal from the final judgment in the underlying action." *Myers*, 593 F.3d at 345 (quoting *Mohawk Indus.*, 558 U.S. at 106).

In determining whether a particular ruling falls within the collateral-order doctrine, appellate courts evaluate "the entire category to which a claim belongs" and "do not engage in an 'individualized jurisdictional inquiry.'" *Mohawk Indus.*, 558 U.S. at 107 (citations omitted). An appellate court must make this evaluation "without regard to the chance that the litigation at hand might be speeded, or a 'particular injustic[e]' averted, by prompt appellate court decision." *United States v. Moussaoui*, 333 F.3d 509, 516 (4th Cir. 2003) (quoting *Van Cauwenberge v.*

*Biard*, 486 U.S. 517, 529 (1988); *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1978)).  Moreover, in evaluating the third prong, the Supreme Court has explained, "That a ruling 'may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment . . . has never sufficed." *Mohawk Indus.*, 558 U.S. at 106 (quoting *Digital Equipment Corp.*, 511 U.S. at 868).  Likewise, under the first prong, "an order is 'final' for purposes of the collateral order doctrine when it is 'made with the expectation that [it] will be the final word on the subject addressed." *Moussaoui*, 333 F.3d at 515 (quoting *Cohen*, 337 U.S. at 546).

More important, the Supreme Court has stressed repeatedly that the collateral-order doctrine is applied with special stringency in criminal cases. "[B]ecause of the compelling interest in prompt trial, the Court has interpreted the requirements of the collateral-order exception to the final judgment rule with the utmost strictness in criminal cases." *Moussaoui*, 333 F.3d at 515 (quoting *Flanagan v. United States*, 465 U.S. 259, 265 (1984)).  "[E]ncouragement of delay is fatal to the vindication of the criminal law." *Id*. (quoting *Cobbledick*, 309 U.S. at 325).  "[T]he delays and disruptions attendant upon intermediate appeal are especially inimical to the effective and fair administration of the criminal law." *DiBella v. United States*, 369 U.S. 121, 126 (1962).  *See also United States v. Jefferson*, 546 F.3d 300, 308 (4th Cir. 2008) ("Interlocutory appellate review of a

16

non-final decision of a district court is highly disfavored, particularly in a criminal case."); *United States v. Moussaoui*, 483 F.3d 220, 226 (4th Cir. 2007) (noting the "exceedingly rare instances in which the collateral order doctrine should apply in the criminal context").

In the 64 years since the Supreme Court created the collateral-order doctrine in *Cohen*, the Supreme Court has recognized only four situations where a criminal defendant is permitted to appeal under the collateral-order doctrine—bail determinations, denials of motions to dismiss under the Speech and Debate Clause, denials of motions to dismiss on double jeopardy grounds, and orders that a defendant be forcibly medicated to restore competency. *See, e.g., Sell v. United States*, 539 U.S. 166, 190-91 (2003) (Scalia, J., dissenting); *Myers*, 546 F.3d at 309.

The Supreme Court has also recently stressed that the narrowness of the collateral-order doctrine—even in civil cases—"has acquired special force in recent years" because Congress has enacted "legislation designating rulemaking, 'not expansion by court decision,' as the preferred means for determining whether and when prejudgment orders should be immediately appealable." *Mohawk Indus., Inc.*, 558 U.S. at 113 (citations omitted). The "rulemaking process has important virtues. It draws on the collective experience of bench and bar, see 28 U.S.C. § 2073, and it facilitates the adoption of measured, practical solutions." *Id*. at 114.

17

In *Flanagan*, the Supreme Court overruled cases such as this Court's decision in *United States v. Smith*, 653 F.2d 126 (4th Cir. 1981), permitting a pretrial appeal of disqualification of a criminal defendant's lawyer. 465 U.S. at 263 n.2. The Supreme Court explained that permitting appeal only after a final judgment "helps preserve the respect due trial judges by minimizing appellate-court interference with the numerous decisions they must make in the pre-judgment stages of litigation," "reduces the ability of litigants to harass opponents and to clog the courts through a succession of costly and time-consuming appeals," and "is crucial to the efficient administration of justice." *Id*. at 263-64. These considerations are at their "strongest in the field of criminal law." *Id*. at 264. Not only does a defendant have a Sixth Amendment right to a speedy trial, but also "there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused." *Id*. (quoting *Barker v. Wingo*, 407 U.S. 514, 519 (1972)). Delay increases pretrial detention or "the period during which defendants released on bail may commit other crimes," and "prolongs public anxiety over community safety." *Id*. Thus, the Supreme Court "has interpreted the requirements of the collateral-order exception to the final judgment rule with the utmost strictness in criminal cases." *Id*. at 265.

Crucially, in deciding that a defendant cannot file a pretrial appeal of an order disqualifying defense counsel, the Supreme Court compared a defendant's

choice of counsel to the right to self-representation and concluded that post-

conviction review sufficed.  The Court's reasoning precludes permitting an

interlocutory appeal here:

> Petitioners correctly concede that post-conviction review of a
> disqualification order is fully effective to the extent that the asserted right to
> counsel of one's choice is like, for example, the Sixth Amendment right to
> represent oneself.  *See Faretta v. California*, 422 U.S. 806 (1975).
> Obtaining reversal for violation of such a right does not require a showing of
> prejudice to the defense, since the right reflects constitutional protection of
> the defendant's free choice independent of concern for the objective fairness
> of the proceeding.  *See McKaskie v. Wiggins*, 465 U.S. 168, 177 n. 8 (1984).
> . . .  In sum, as petitioners concede, if establishing a violation of their
> asserted right requires no showing of prejudice to their defense, a pretrial
> order violating the right does not meet the third condition for coverage by
> the collateral order exception: it is not "effectively unreviewable on appeal
> from a final judgment."

*Flanagan*, 465 U.S. at 268.

The above analysis forecloses jurisdiction for defendant's appeal.  As

*McKaskle* explained, "since the right of self-representation is a right that when

exercised usually increases the likelihood of a trial outcome unfavorable to the

defendant, its denial is not amenable to 'harmless error' analysis.  The right is

either respected or denied; its deprivation cannot be harmless."  465 U.S. at 177

n.8.  *See also Neder v. United States*, 527 U.S. 1, 8 (1999) (describing "denial of

self-representation at trial" as structural error not susceptible to harmlessness

analysis).  Thus, an appeal after a conviction and final judgment will provide

sufficient relief.

In short, this Court correctly concluded in its unpublished opinions in

*Moussaoui*, 43 F. App'x at 614 and *Young*, 12 F. App'x at 147 that a defendant

may not file an interlocutory appeal challenging the denial of his right to self-

representation.  The third prong of the collateral-order doctrine cannot be satisfied.

Moreover, particularly in light of defendant's pending competency evaluation, the

first prong also cannot be satisfied.  After reviewing the BOP report finding

defendant competent to stand trial, the Court may revisit its ruling on defendant's

request to represent himself, particularly if defendant chooses to answer the district

court's questions and permits the court to make findings that defendant is capable

of representing himself.   The district court itself made this point at the end of the

hearing on April 16, 2013.  JA 22-23.

As noted in the United States' statement regarding oral argument, the United

States believes that a published, binding opinion that adopts this Court's

conclusions in *Moussaoui* and *Young* would be beneficial and would help avert

delays in future trials.  The general rule is that the filing of a notice of appeal

divests a district court of jurisdiction.  As the Supreme Court has said, ordinarily,

"a federal district court and federal court of appeals should not attempt to assert

jurisdiction over a case simultaneously."  *Griggs v. Provident Consumer Discount*

*Co.*, 459 U.S. 56, 58 (1982).  But as this Court has recognized, there is an

exception when a party files an interlocutory appeal that is frivolous.  *See, e.g.,*

*United States v. Blake*, 571 F.3d 331, 343 n.6 (4th Cir. 2009) (noting district court

proceeded with trial despite defendant's filing interlocutory appeal; defendant, who

was 21, was making frivolous argument in interlocutory appeal that his prosecution

had to comply with federal Juvenile Delinquency Act); *United States v.*

*Montgomery*, 262 F.3d 233, 240 (4th Cir. 2001) ("[A]ppellate courts, including this

one, have developed a 'dual jurisdiction' rule, which allows a district court to

proceed with trial while a defendant pursues an *Abney* [interlocutory] double

jeopardy appeal, where the district court has concluded that the appeal is

frivolous."); *United States v. Ellis*, 646 F.2d 132, 134 (4th Cir. 1981) ("Defendants

cannot be allowed to delay trials and to dislocate the orderly procedure of the

courts simply by raising frivolous claims of double jeopardy" in an interlocutory

appeal.).  *See also Levin v. Alms and Assoc., Inc.*, 634 F.3d 260, (4th Cir. 2011)

(discussing exception for frivolous appeals in context of civil case).

If this Court were to issue a published opinion resolving in binding

precedent the question whether there is jurisdiction for an interlocutory appeal of

an order denying a defendant's request for self-representation, that would clarify

for district courts that they need not postpone a trial when such a notice of appeal

is filed.  Thus, the small additional delay in this appeal to hold oral argument and

produce published precedent could help avoid more unnecessary delays in the future.

> **2.    If this Court were to conclude that there is jurisdiction to review the denial of defendant's motion to represent himself, the district court did not clearly err in finding that the request was not knowing and voluntary.**

As the district court noted, in evaluating a defendant's request for self-representation, this Court considers three factors. A defendant "may waive the right to counsel and proceed at trial pro se only if the waiver is (1) clear and unequivocal, (2) knowing, intelligent and voluntary, and (3) timely." *United States v. Bernard*, 708 F.3d 583, 588 (4th Cir. 2013) (citing *United States v. Frazier-El*, 204 F.3d 553, 558 (4th Cir. 2000)).

This Court has observed that the requirement of a clear invocation of the right to self-representation serves two goals. First, "The requirement that the assertion be clear and unequivocal 'is necessary to protect against an inadvertent waiver of the right to counsel by a defendant's occasional musings.'" *United States v. Bush*, 404 F.3d 263, 271 (4th Cir. 2005) (quoting *Frazier-El*, 204 F.3d at 558-59). Second, the requirement "prevents a defendant from taking advantage of and manipulating the mutual exclusivity of the rights to counsel and self-representation." *Id*.

Moreover, when a district court is faced with an ambiguous invocation of the right to self-representation, or an invocation that does not appear to be knowing

and voluntary, this Court has counseled in many cases that a district court should favor the right to counsel, as the district court did here. "[I]n ambiguous situations created by a defendant's vacillation or manipulation, we must ascribe a 'constitutional primacy' to the right to counsel." *Bush*, 404 F.3d at 271 (quoting *Frazier-El*, 204 F.3d at 558-59). "Of the two rights"—the right to counsel and the right to self-representation—"the right to counsel is preeminent and hence, the default position." *United States v. Singleton*, 107 F.3d 1091, 1096 (4th Cir. 1997) (collecting cases). "Where the two rights are in collision, the nature of the two rights makes it reasonable to favor the right to counsel which, if denied, leaves the average defendant helpless." *Id*. (citation omitted).

The Supreme Court has recently reiterated that the right to counsel and the right to self-representation are in "some tension." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (per curiam). This tension arises because the Supreme Court has often stressed how critical competent defense counsel can be to a constitutionally adequate defense. "As the *Faretta* Court observed, '[t]here can be no blinking the fact that the right of an accused to conduct his own defense seems to cut against the grain of this Court's decisions holding that the Constitution requires that no accused can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel.'" *Marshall*, 133 S. Ct. at 1449-50 (quoting *Faretta v. California*, 422 U.S. 806, 832 (1975)). Recognizing this

23

tension, this Court has held, "In order to preserve both the right to counsel and the right to self-representation, a trial court must proceed with care in evaluating a defendant's expressed desire to forgo the representation of counsel and conduct his own defense." *Singleton*, 107 F.3d at 1096.

Under this Court's cases and the Supreme Court's cases, a defendant is not permitted to manipulate the legal system by refusing to provide answers that allow the courts to determine whether a waiver of counsel is knowing and voluntary. A defendant may not leave the judicial system and the public with a record that permits a defendant to argue later that either his right to self-representation was denied because the court did not allow the defendant to represent himself, despite his contumacious refusals to answer the court's questions, or that the court erred in granting the defendant the right to represent himself by failing to ensure that the waiver was knowing and voluntary. *See, e.g., United States v. Tucker*, 2013 WL 4034472, *6 (4th Cir. Aug. 9, 2013) (unpublished) (affirming district court where no clear error in the "factual finding that Tucker's true motivation for proceeding pro se was to manipulate the legal system and drag out an already long trial process while he remained free on bond."); *United States v. Edwards*, 2013 WL 3828177, *2-3 (4th Cir. July 25, 2013) (affirming district court where defendant stated that he "reluctantly" was proceeding pro se, felt like he had to represent himself

because of his complaints about his lawyer, and claimed that he was being forced to represent himself).

In this case, the district court did not clearly err in finding that defendant's request to represent himself was not knowing and voluntary. Given defendant's repeated refusals to answer the district court's questions, it was impossible for the court to determine that defendant's request for self-representation was knowing and voluntary. Defendant's own defiance of the court created a record that makes it impossible to find that his request was made knowingly and voluntarily.

## II.    This Court should not accept defense counsel's speedy-trial argument submitted under *Anders*, and even if the Court did, the Court lacks jurisdiction to review a speedy-trial claim in an interlocutory appeal.

### A.    Standard of Review

The permissibility of the *Anders* procedure in this appeal is a question that first arises on appeal and hence is not subject to a deferential standard of review. Questions about this Court's jurisdiction to review the speedy-trial claim mentioned in the *Anders* portion of defense counsel's brief is a question of law evaluated without a deferential standard of review. *Kporlor*, 597 F.3d at 225.

### B.    Analysis

#### 1.    Quasi-*Anders* briefs where some issues are submitted under *Anders* and some are not fail to comply with the law.

Defendant's counsel has submitted a brief that raises one issue as a nonfrivolous claim—namely, whether the district court erred in denying defendant's request to represent himself.  That issue was discussed above.  But defendant's counsel also stated that his "brief is submitted to the Court, *in part*, pursuant to the holding of *Anders v. California*, 386 U.S. 738 (1967)."  Def. brief at 3 (emphasis added).

The government understands what could be defense counsel's possible reasoning for the approach.  Defense counsel is dealing with a difficult client, one who variously purports to be Moorish or a sovereign citizen and who is obstreperous even toward the district court.  Difficult defendants increasingly file bar complaints against defense counsel or otherwise seek to punish defense counsel when the defendants' demands, such as raising pet issues, are not met.  This is a serious problem for defense lawyers and others in the legal system, and as explained next, the law in the Fourth Circuit does not clearly answer how to proceed when a lawyer believes there is one meritorious issue, but the client wants another issue presented that the lawyer believes is frivolous.  In analyzing an appeal where defense counsel took the same approach that defense counsel did here of including issues that are partly under *Anders* and partly not, the Third

Circuit aptly observed that "we have no doubt that it was well-intentioned and counsel were no doubt perplexed as to what to do." *United States v. Turner*, 677 F.3d 570, 576 (3d Cir. 2012).

To underscore the Third Circuit's statement, the United States notes that this appeal is not by any means the first time that defense attorneys have filed appellate briefs that are submitted partly under *Anders* and partly not. In a quick search of Fourth Circuit briefs that was not intended to be exhaustive, but instead just illustrative of the confusion, the United States was readily able to find that the practice of submitting partial or quasi-*Anders* briefs is common. Here are a few examples that make the point: *United States v. Pendergrass*, no. 11-5134, def. brief at 2012 WL 3867231, *6 n.1; *United States v. Fuller*, no. 11-5019, def. brief at 2012 WL 168300, *5; *United States v. McBride*, no. 10-5162, def. brief at 2011 WL 1097140, *10 n.1; *United States v. Lusk*, no. 09-5064, def. brief at 2010 WL 1811754, *5 n.2; *United States v. Torriente*, no. 08-4881, def. brief at 2008 WL 5168928, n.1; *United States v. Puryear*, no. 08-4951, gov. brief noting issue at 2009 WL 964731; *United States v. Morton*, no. 06-4311, def. brief at 2007 WL 627086; *United States v. Sweat*, no. 06-4312, def. brief at 2006 WL 3449227.

Notably, this Court's treatment of quasi-*Anders* briefs has not been consistent, understandably enough given that, to the undersigned's knowledge, the litigants never analyze the propriety of the practice. Given that the practice occurs

27

without analysis by the litigants, it is unsurprising that some of the opinions

deciding these appeals have accepted the quasi-*Anders* briefs without comment or

objection. *See, e.g., United States v. Pendergrass*, 503 F. App'x 237 (4th Cir.

2013). But in other cases, such as in *Puryear*, the Court on its own deemed the

entire brief from defense counsel to be a merits brief not submitted under *Anders*,

while rejecting the propriety of a quasi-*Anders* brief. *See, e.g., United States v.

Puryear*, 335 F. App'x 291, 292 (4th Cir. 2009) ("Because we conclude that

counsel's effort to combine a meritorious claim with claims conceded to be lacking

in merit does not comport with the *Anders* framework, *see* [386 U.S.] at 744-45

(setting forth procedure to be followed when counsel finds 'case to be wholly

frivolous'), we decline to consider this appeal pursuant to *Anders*.").

     The clerk's office understandably also appears to be not entirely clear about

how to proceed and, in this case, has sent an *Anders* notice to defendant.

Apparently because defendant was transported for a psychiatric evaluation of his

competency to stand trial and the evaluation has now been completed, he has not

been easy to reach by mail. When the *Anders* notice does reach him, however, he

may feel obliged to file a pro se brief even though he does have appointed counsel

who has filed a brief that argues that the main issue that defendant sought to pursue

on appeal is meritorious. But unfortunately, when defendant receives the *Anders*

notice, he may mistakenly believe that his lawyer is not defending any of his

arguments. This Court does not have a partial-*Anders* notice, so all that the notice says is that defense counsel has submitted a brief under *Anders*, while outlining the *Anders* procedures. Thus, the notice may further complicate his relationship with defense counsel by leading defendant to believe that his lawyer has not pursued any of the issues that defendant wanted to appeal. In short, the uncertainty about the appropriate procedures above suggests that further guidance from this Court would be helpful.

In *Turner*, the Third Circuit answered two questions: First, is defense counsel prohibited from filing quasi-*Anders* appellate briefs that include some issues as nonfrivolous and other issues as frivolous and submitted under *Anders*? Answering that question, *Turner* explained that not only are defense lawyers not *required* to raise frivolous issues, but also they are not *permitted* to do so. 677 F.3d at 576-77. Both the rules of professional ethics and Supreme Court precedent preclude such quasi-*Anders* briefs. Second, *Turner* concluded that because pro se litigants have no right to "hybrid representation," the court would not consider pro se briefs when a defendant is represented by counsel. 677 F.3d at 578-79. This second conclusion flowed in part from the settled law rejecting a right to hybrid representation, but also from a Third Circuit local rule—which this Court does not have—stating that, except in cases where defense counsel withdraws under *Anders*,

29

"parties represented by counsel may not file a brief pro se." 677 F.3d at 578 (quoting 3d Cir. Local Rule 31.3).

*Turner*'s analysis on the first question shows that it is correct as a matter of federal law, without regard to local rules. This Court effectively agreed in *Puryear*, concluding that the *Anders* procedure is reserved for cases where defense counsel thinks the appeal is "wholly" frivolous. *Puryear*, 335 F. App'x at 292.

In *Turner*, the Third Circuit began by noting that the Supreme Court has held that a defendant has no constitutional right to compel defense counsel to raise frivolous issues on appeal. "Neither *Anders* nor any other decision of this Court suggests . . . that the indigent defendant has a constitutional right to compel appointed counsel to press [even] *nonfrivolous* points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Turner*, 677 F.3d at 576 (quoting *Jones v. Barnes*, 463 U.S. 745, 751 (1983)).

Next, *Turner* observed that rules of professional ethics (there the Pennsylvania rules, though the Pennsylvania rules are not unusual on this point) prohibit lawyers from pressing frivolous arguments. *Id*. at 577. Indeed, as *Turner* notes, the Supreme Court has itself made this same point. "This basic rule accords with the Supreme Court's admonition that '[a]n attorney, whether appointed or paid, is . . . under an ethical obligation to refuse to prosecute a frivolous appeal.'" 677 F.3d at 577 (quoting *McCoy v. Court of Appeals of Wis., Dist. 1*, 486 U.S. 429,

30

436 (1988)).  *Turner* summed up, "Stated simply, counsel need not, and should not, present frivolous arguments merely because a client instructs them to do so."  *Id*.

As *Turner* also explains, the *Anders* process is not meant to be a way around the rules above.  "*Anders* briefs ensure that constitutional rights are protected; they are not an opportunity to brief issues that would otherwise be unacceptable.  By filing an *Anders* brief without seeking to withdraw, counsel have presented issues to the Court that need not have been raised."  677 F.3d at 577 (citing *McCoy*, 486 U.S. at 444, 436).  *Turner* likewise noted, as this Court has as well, that appellate advocates benefit by focusing their arguments on appeal on their strongest claims.  *Id*.  *See also United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013) ("[C]ounsel is not obligated to assert all nonfrivolous issues on appeal, as '[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review.'") (quoting *Jones*, 563 U.S. at 752; *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (en banc)).  Thus, as *Turner* and *Jones* explain, "[T]o second-guess reasonable professional judgment and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies *Anders*."  *Turner*, 677 F.3d at 578 (quoting *Jones*, 463 U.S. at 754).

31

Having rejected that counsel may submit quasi-*Anders* briefs, *Turner* next concluded that it would not accept pro se briefs when a defendant was represented by counsel and counsel filed a brief that was not under *Anders*. First, *Turner* explained that there is no right to hybrid representation where a defendant both engages in self-representation and has counsel actively representing the defendant. "Pro se litigants have no right to 'hybrid representation' because '[a] defendant does not have a constitutional right to choreograph special appearances by counsel.'" *Turner*, 677 F.3d at 578 (quoting *McKaskle*, 465 U.S. at 183). This rule has special force on appeal because a defendant has no right to self-representation on appeal. *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 163 (2000). All of these principles apply fully in this Circuit as well, but *Turner* also relied on a local rule in the Third Circuit that this Court does not have.

The Third Circuit has a local rule that provides that, except in *Anders* cases, "parties represented by counsel may not file a brief pro se." *Turner*, 677 F.3d at 578 (quoting 3d Cir. Local Rule 31.3). The Third Circuit explained its reasoning for this rule: "By requiring that briefs be filed only by counsel, we ensure that counsel and client speak with one voice. When a client seeks to raise additional issues, counsel must evaluate them and present only the meritorious ones, rather than simply seeking leave for the client to file a supplemental brief. This promotes effective advocacy because it prevents counsel from allowing frivolous arguments

32

to be made by the client." *Id*. at 579 (citing *Jones*, 463 U.S. at 751-53). *Cf. United States v. Chapman*, 593 F.3d 365 (4th Cir. 2010) (decision of whether to accept trial court's offer of mistrial without prejudice was tactical decision for defense counsel, and defense counsel was not required to follow defendant's instructions on accepting offer of mistrial). *See also Florida v. Nixon*, 543 U.S. 175, 187 (2004) ("an attorney has authority to manage most aspects of the defense without obtaining his client's approval") (citing *Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988)); *United States v. Westmoreland*, 712 F.3d 1066, 1079 (7th Cir. 2013).

The Third Circuit concluded in *Turner* that permitting dueling briefs from defense counsel and a defendant was on balance more costly than beneficial. "Apart from the procedural morass that would follow such 'hybrid' advocacy (as occurred in this case), our attention would be diverted from potentially meritorious arguments." *Turner*, 677 F.3d at 579. Permitting pro se briefs while defense counsel simultaneously submits a merits brief also raises nettlesome questions later in reviewing a conviction. If a defendant later claims defense counsel was ineffective for failing to raise an issue that the pro se brief did raise, courts must either say that the pro se brief somehow did not count as raising the issue, which seems inconsistent with accepting the brief, or leave the defendant with the presentation that the defendant made of the argument without the assistance of counsel. Neither response seems fully satisfactory.

33

Other circuits agree with the Third Circuit and reject hybrid representation on appeal because it burdens the courts with frivolous arguments, causes the public to pay both the costs of appointed counsel and the expense of resolving pro se litigation, subjects other litigants to delay, and yields negligible benefits. *See, e.g., United States v. Oreye*, 263 F.3d 669, 673 (7th Cir. 2001) ("we don't allow hybrid representation on appeal . . . because hybrid representation confuses and extends matters."); *United States v. Ogbonna*, 184 F.3d 447, 449 n.1 (5th Cir. 1999) (same).

The current appeal does not currently squarely present the second question considered in *Turner* because defendant has not currently submitted a merits brief after his counsel's brief. Moreover, although defendant may do so, he will have filed a pro se brief in response to this Court's *Anders* notice. And as explained next, there are reasons unique to interlocutory appeals that make it inappropriate to use the *Anders* process in an interlocutory appeal—even setting aside the problem of quasi-*Anders* briefs.

## 2. The reasons for having *Anders* briefs do not apply to interlocutory appeals.

This appeal involves a special context—an interlocutory appeal—where the *Anders* procedure is particularly inapt. In a frivolous interlocutory appeal that a defendant files pro se, defense counsel could move to withdraw, leaving the defendant to file a pro se appellate brief, or counsel could file a brief that addressed

34

only the most colorable claims, and this Court would then review only those claims without perform an independent review of other issues. A number of points reinforce that the standard *Anders* procedures should not be used in an interlocutory appeal.

First, the *Anders* case itself addressed "the duty of a court-appointed appellate counsel to prosecute a first appeal *from a criminal conviction*, after that attorney has conscientiously determined that there is no merit to the indigent's appeal." *Anders v. California*, 386 U.S. 738, 739 (1967) (emphasis added). Thus, *Anders* itself did not contemplate the procedure that it outlined applying to an interlocutory appeal before conviction.

Second, applying the *Anders* framework introduces unwarranted delay in a context where delay, as noted above, is especially damaging to the justice system. Because by definition we are considering a defendant's interlocutory appeal where the defendant's own counsel has concluded that there is no meritorious issue, and because appeal after a final conviction remains open, there is particularly little justification for hampering society's and the government's interest in expeditiously resolving the trial. And depending on how far along trial proceedings are, the normal steps of an *Anders* appeal could introduce substantial delay just through the mechanics of an appeal. Suppose, for example, that midway through a multi-week trial, a defendant unsuccessfully requested to represent himself and then filed a pro

35

se notice of appeal from that ruling. The normal procedure for an *Anders* appeal is to have *all* proceedings transcribed for this Court to perform its independent review. But that would mean that the trial could be put on hold while the court reporter tries to complete transcripts of multiple days of pretrial hearings and several weeks or more of trial testimony.

Third, because no final judgment has been reached, a court that reviews issues on its own might well meddle in issues that a defendant and defense counsel have deliberately chosen not to challenge for strategic or other reasons. For example, in this case, even though defendant was ordered to undergo a competency evaluation, his counsel has not challenged that evaluation. There could be multiple reasons why a defense lawyer or defendant would not challenge such an evaluation. The defense lawyer's interactions with a defendant might lead the defense lawyer to be sincerely convinced that the defendant is incompetent, and even if the defense attorney has doubts, the evaluation might produce some finding that would be mitigating at sentencing or otherwise useful. The evaluation of a defendant's competency to stand trial typically includes an evaluation of insanity at the time of the offense, and a defense attorney might well welcome even the remote possibility of turning up a defense to otherwise powerful evidence of guilt. If this Court were to evaluate whether there was error in ordering the evaluation,

36

and were to conclude that there was error, the Court might well override defense counsel's quite reasonable, considered strategic choices.

Moreover, this Court might make mistakes based on an incomplete record. In this case defendant's psychiatric evaluation in fact was completed at the end of July 2013, but the district court docket does not reflect that because all proceedings have been put on hold while this interlocutory appeal is proceeding. But because the evaluation has occurred, that ought to moot the issue, although further factual development on whether the competency issue could recur may be important to a mootness analysis. *See, e.g., United States v. Thompson*, 462 F. App'x 561 (6th Cir. 2012). *Cf. United States v. Weston*, 194 F.3d 145, 148 (D.C. Cir. 1999) (challenge to mental evaluation moot because evaluation never carried out). An *Anders* review might cause a court to miss the mootness issue because the trial record that reaches this Court might be incomplete.

This Court has recently concluded that a defendant *who was not detained* could bring an interlocutory appeal of a district court's ruling that ordered a custodial competency evaluation. *See United States v. Song*, 2013 WL 3186440, *3 (4th Cir. 2013) (unpublished) (citing *United States v. Deters*, 143 F.3d 577, 579-82 (10th Cir. 1998)). That ruling is in accord with most circuits' law because defendants generally have a right to appeal detention rulings. *But see United States v. Barth*, 28 F.3d 253 (2d Cir. 1994). In this case, however, defendant was

already detained. Thus, as a number of circuits have correctly concluded, interlocutory review should not be permitted of a competency evaluation of an already-detained defendant. *See, e.g., Pierce v. Blaine*, 467 F.3d 362, 370 (3d Cir. 2006) (distinguishing *Deters*, the case that this Court cited in *Song*, because *Deters* involved a defendant who "asked to be examined on an outpatient basis" but was ordered to be examined in "an inpatient commitment"). A non-invasive competency evaluation that involves asking an already-detained defendant questions does not implicate the same concerns that led the Supreme Court to permit interlocutory appeal of an order requiring forcible medication. *Sell*, 539 U.S. at 176-77. As the above discussion illustrates, another problem with applying Anders to interlocutory appeals is that this Court should not venture out and decide novel jurisdictional issues to evaluate a claim that a defendant has not raised and may have very good reasons for not raising.

Fifth, the one court of appeals that has directly addressed in a published opinion whether to apply the *Anders* framework to an interlocutory appeal has concluded that defense counsel is not required to file an *Anders* brief in a frivolous appeal from a non-appealable order. *United States v. Powell*, 468 F.3d 862 (5th Cir. 2006) ("There is no *Anders* duty in situations such as this where defendant seeks an appeal of a non-appealable order over which this court has no jurisdiction.

Such situations implicate none of the concerns underlying the *Anders* framework as no jurisdiction for an appeal even exists.").

Sixth, even if a defense lawyer faced with a frivolous interlocutory appeal is permitted to file a brief outlining the best nonfrivolous issues that defense counsel could identify for appeal, this Court should not perform its own independent review for other issues. When reviewing a final judgment after conviction and sentencing, three courts of appeals have held that when defense counsel submits an *Anders* brief that thoroughly reviews colorable claims, the court of appeals will not conduct its own independent review of other issues. *See, e.g., United States v. Flores*, 632 F.3d 229, 234 (5th Cir. 2011); *United States v. Youla*, 241 F.3d 296, 301 (3d Cir. 2001); *United States v. Wagner*, 103 F.3d 551, 552 (7th Cir. 1996).

Seventh, Congress has manifested its intent that criminal cases not be needlessly delayed by interlocutory appeals. Congress's approach to delay posed by interlocutory appeals is made clear in two ways: First, Congress has created an extremely small number of express statutory authorizations for interlocutory appeals. Second, under the statute that permits the United States to take an interlocutory appeal of the exclusion of evidence, 18 U.S.C. § 3731, the United States must to certify that the appeal is not being taken for purposes of delay and that the evidence is substantial proof of a material fact. This Court has made clear that it takes the certification requirement very seriously and may dismiss an appeal

when it is not satisfied.  *See, e.g., United States v. McNeill*, 484 F.3d 301, 306-10 (4th Cir. 2007).  It would be unusual to take such an approach to government appeals but then, through court-created doctrine, extend the *Anders* procedure to interlocutory appeals that a defense lawyer certifies as frivolous.  Moreover, not only is there the certification requirement in § 3731 for government appeals of rulings excluding evidence, but also and separately, permission from the Solicitor General personally is required for the United States to pursue such an appeal, a requirement that is not court-enforced but is rigorously enforced within the government.  *See* 28 C.F.R. § 0.20(b); *United States v. Hill*, 19 F.3d 984, 991 n.6 (5th Cir. 1994) (citing *Hogg v. United States*, 428 F.2d 274 (6th Cir. 1970)).

In short, there are considerable obstacles to even *meritorious* interlocutory appeals; courts should not add significant procedural steps and delay to *frivolous* interlocutory appeals.  Adding process where there is little benefit in return drains the government's limited resources, harms all litigants through burdening the courts, needlessly delays the trials in which the interlocutory appeals occur, and confers no meaningful benefits in return.

> **3.    Even if this Court were to permit the *Anders* procedures to be used in an interlocutory appeal and were to permit defense counsel to submit a quasi-*Anders* brief, the speedy-trial claim that defense counsel identifies as frivolous is indeed frivolous.**

The issue defense counsel raises under *Anders*, namely, defendant's objection under the Speedy Trial Act, plainly cannot be raised in an interlocutory appeal.  The Supreme Court and this Court have already held that jurisdiction is lacking for such an appeal.  *See, e.g., United States v. MacDonald*, 435 U.S. 850, 858-61 (1978) (denial of motion to dismiss under constitutional right to speedy trial not immediately appealable before final judgment); *United States v. Buchanan*, 946 F.2d 325, 327 (4th Cir. 1991) (order denying motion to dismiss indictment for alleged violation of Speedy Trial Act not immediately appealable before final judgment).

If this Court were to conclude that there is jurisdiction to review defendant's speedy-trial claim, defendant's claim is meritless.  Under 18 U.S.C. § 3161(c)(1), a defendant must be tried within 70 days of the date of the indictment or "the date the defendant has appeared before a judicial officer" on the indictment, "whichever date last occurs."  Defendant was indicted on December 19, 2012, but he did not first appear before a judicial officer on the charges until his appearance before a magistrate judge on January 11, 2013.  JA 2.

41

The time consumed by motions is automatically excludable under 18 U.S.C. § 3161(h)(1)(D). *Henderson v. United States*, 476 U.S. 321, 330 (1986). A wide range of motions in this case excluded substantial amounts of time. The government's detention motion excluded time. *United States v. Gonzalez-Rodriguez*, 621 F.3d 354, 368-69 (5th Cir. 2010). Defendant's first attorney's filed a motion to withdraw on January 28, 2013, and that motion was not resolved until February 28, 2013. JA 2-3. All of that time was excludable. Defendant also himself filed a series of motions on January 15, 2013; February 1, 2013; February 4, 2013; February 11, 2013; March 15, 2013; and March 27, 2013. JA 3-5. Those motions were not disposed of until April 17, 2013.

On April 16, 2013, the district court ordered defendant to undergo a psychological evaluation, and the time for that is excludable under 18 U.S.C. § 3161(h)(1)(A). Defendant also filed an interlocutory appeal on April 24, 2013, and the time consumed by this present appeal is excludable under 18 U.S.C. § 3161(h)(1)(C). In short, the 70 days permitted for trial under the Speedy Trial Act has not expired.

## Conclusion

For the foregoing reasons, this Court should dismiss this appeal in its entirety, without performing an *Anders* review.

42

Respectfully submitted,

Neil H. MacBride
United States Attorney

_____/s/_____
Richard D. Cooke
Assistant United States Attorney

## Statement Regarding Oral Argument

This Court does not have a published opinion addressing whether an interlocutory appeal may be taken to challenge an order rejecting a defendant's request for self-representation.  Although the United States believes that the law is clear that jurisdiction is lacking for such appeals, binding precedent on the issue would help prevent delays in trials.  Binding precedent would make clear to district courts that, notwithstanding the filing of a pro se interlocutory notice of appeal, the district court can proceed with trial because the interlocutory appeal is frivolous. *See, e.g., United States v. Montgomery*, 262 F.3d 233, 240 (4th Cir. 2001) (explaining exception that frivolous appeals do not divest district court of jurisdiction). The small additional delay in this appeal, therefore, to hold oral argument and produce published precedent could help avoid more unnecessary delays in the future.

This appeal also raises two confusing question that this Court has not squarely addressed in a published opinion, although these issues are less significant than the jurisdictional one just noted.  First, when a defendant is represented by counsel who briefs issues on the merits that counsel believes are nonfrivolous, may counsel also address other issues that counsel believes are frivolous but that are purported to be submitted under *Anders*?  *See United States v. Turner*, 677 F.3d 570 (3d Cir. 2012) (rejecting that defense counsel can file "quasi-*Anders*" brief that

raises some issues under *Anders* and some not). Second, is it appropriate to use the *Anders* process, including in particular a court review of the entire record, in an interlocutory appeal where jurisdiction is limited and speed is important? *See, e.g., United States v. Powell*, 468 F.3d 862 (5th Cir. 2006) (no *Anders* brief required from counsel for frivolous interlocutory appeal). These two issues are important for avoiding delay in interlocutory appeals, respecting limits on interlocutory jurisdiction, and preventing a court from mistakenly interfering with a defense counsel's trial strategies.

## Certificate of Compliance

I certify that I wrote this brief using 14-point Times New Roman typeface and Microsoft Word 2010.

I further certify that this brief does not exceed 14,000 words (and is specifically 9,966 words) as counted by Microsoft Word, excluding the table of contents, table of citations, statement regarding oral argument, this certificate, the certificate of service, and any addendum.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

_____/s/_____
Richard D. Cooke
Assistant United States Attorney

**Certificate of Service**

I certify that on August 30, 2013, I filed electronically the foregoing brief with the Clerk of the Court using the CM/ECF system, which will send notice of the filing to the attorney below:

Harry Harmon, Esq.
500 East Plume Street, Suite 105
Norfolk, Virginia 23510-2317
(757) 623-2353
harry_harmon@verizon.net

By:     _____/s/_____
        Richard D. Cooke
        Assistant United States Attorney
        Eastern District of Virginia
        600 East Main Street, Suite 1800
        Richmond, Virginia 23219
        (804) 819-5400
        richard.cooke@usdoj.gov